UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20184-CIV-KING/MCALILEY

ANDREW KARACSONYI,

        Plaintiff,

v.

CARLOS ALVAREZ,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are Defendant Carlos Alvarez' Motion for More Definite Statement, Motion to Strike, and/or Motion to Dismiss Complaint [DE 13]; Defendant Carlos Alvarez' Motion to Strike Amended Complaint for Consequential Damages [DE 17]; and Plaintiff's Motion for Default Judgment, Motion to Institute Class Action, Motion for Sanctions. [DE 20]. The motions are fully briefed [DE 14, 17, 25, 31, 32], and were referred to me by the Honorable James Lawrence King. [DE 15, 18, 22]. For the reasons set forth below, I recommend that the motions to dismiss be granted, in part with prejudice. In light of this recommendation, I also recommend that the remaining motions be denied as moot.

### I.   Background

On January 14, 2011, Plaintiff filed his complaint against Defendant Carlos Alvarez, a police officer, and three unknown defendants, also police officers, alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986, arising out of a traffic stop of Plaintiff's car in a Wal Mart parking lot on September 30, 2009. [DE 1, pp. 1, 2]. According to his complaint,

Plaintiff was approached by an unidentified Miami-Dade County police officer while he was in his vehicle in the parking lot, and was asked for his license and registration.  Plaintiff told the unidentified officer that "the Florida Dept of Highway Safety and Motor Vehicle . . . traffic regulatory laws were and are invalid/defacto, and therefore have no force and effect of law;" he also gave the officer a legal memorandum supporting his contentions.  [*Id.* at p. 2].[1]

Plaintiff alleges that this unidentified officer detained him in the parking lot for approximately 90 minutes, during which time Defendant Alvarez appeared on the scene. After a heated verbal exchange, Alvarez ordered Plaintiff out of his vehicle.  While Alvarez was attempting to handcuff Plaintiff, Plaintiff reached for his keys so that he could lock his vehicle, which Alvarez mistook as Plaintiff resisting arrest.  [*Id.* at 3-4].  Alvarez then searched Plaintiff's car, and found a handicap pass in the glove compartment.  Alvarez placed Plaintiff under arrest, charging him with having an expired drivers license and an expired and altered license plate, failure to register his vehicle, misuse of a handicap pass, and resisting arrest.  He removed the Connecticut license plate from Plaintiff's car.  [DE 1, p. 4].

As Plaintiff sat in the back of Alvarez's police car, he told Alvarez twice that his handcuffs were too tight but Alvarez made no response.  Another officer, whose name Plaintiff does not know, transported Plaintiff and two other detainees to the detention center. Plaintiff complains that, due to a rotator cuff injury, his being placed in the back seat of the

---

[1] That memorandum is reproduced verbatim in the complaint.  [*Id.* at pp. 9-11].

police car with two other people constituted "punishment without due process of law." [*Id.* at p. 5]. Plaintiff also asserts that the unknown officer drove recklessly, at a very high speed, and that none of the officers read Plaintiff his *Miranda* rights. [*Id.* at p. 5].

Plaintiff was held at the detention center for approximately 18 hours (from 7 p.m in the evening to 2 p.m. the next day), where the deplorable conditions were "on the threshold of Eighth Amendment violations." Rodents "and other vermin" were present, the air conditioning was unreasonably cold, Plaintiff was not provided basic toiletries and was given only one meal. [*Id.* at 6].

The day after his arrest Plaintiff was brought before a state court judge who informed him of the charges and offered counsel, which Plaintiff refused. At that initial appearance Plaintiff accepted a plea bargain, pled no contest to resisting arrest and misuse of a handicap pass, and the state dismissed the other traffic charges. According to Plaintiff, he entered this plea so that he could immediately be released from detention. He emphasizes that he did not pay the adjudicated fine "as it would be a tacit admission of guilt."[2] [*Id.* at 6-7].

After he was released, Plaintiff returned to the Wal-Mart parking lot to get his car and found that it was unlocked and had been ticketed by the City of North Miami Beach because it did not have a license plate. According to Plaintiff, he has asked to have his car keys and

---

[2] To the extent Plaintiff believes his failure to pay the fine somehow limits the legal significance of his conviction, he is mistaken. Plaintiff claims he entered a plea of *nolo contendere plea*; with such a plea a criminal defendant does not admit guilt. Nonetheless, it results in a conviction, just as it would had the defendant admitted guilt. *See Kirby v. State*, Nos. 5D11-695, 5D11-696, 5D11-697, 2011 WL 3861599, * 1 (5th DCA Sept. 2, 2011) (plea of no contest results in a conviction).

license tag returned to him, and was told that he had to make this request to Alvarez, but Alvarez did not return his calls. [*Id.* at 7].

Plaintiff asserts that the Florida Department of Motor Vehicles, and associated laws, are "based on fraud and deception" and are unconstitutional. In later pleadings, Plaintiff insists that this claim is the "heart" of his complaint. [*See* DE 16, p. 3; DE 20, p.2]. In his complaint, however, Plaintiff identifies eight "Complaints" against Alvarez. Reading the complaint liberally, Complaints 1, 2, 3, 4, and 8 might be construed as claims of false arrest or imprisonment; Complaint 3 might also allege a Fourth Amendment violation based on the warrantless search of Plaintiff's vehicle; Complaint 5 alleges a Sixth Amendment violation because the "Complaint/Arrest Affidavit" given to Plaintiff by Alvarez was illegible; Complaint 6 purports to allege a constitutional violation given Alvarez' failure to give Plaintiff a Miranda warning; and Complaint 7 attempts to allege an excessive force claim based on the fact that the handcuffs caused his left hand to go numb. Plaintiff seeks injunctive relief (the return of his car keys and license tag) and compensatory and punitive damages. [DE 1, p. 26].

On April 1, 2011, Alvarez filed a motion "for a more definite statement, to strike sections of the Complaint that are redundant, inflammatory, irrelevant and/or immaterial, and/or to dismiss the Complaint based on qualified immunity and for failure to state a claim upon which relief can be granted." [DE 13, p. 1]. On May 3, 2011, Plaintiff filed an Amended Complaint for Consequential Damages, attempting to supplement the original complaint with the allegation that because of Alvarez' misconduct, an unidentified Brevard

County Sheriff's officer stopped Plaintiff for driving with a suspended licence.  [DE 16].

On May 12, 2011, Alvarez moved to strike the amended complaint for failure to comply with Federal Rule of Civil Procedure 15(a)(1).  [DE 17].  However, due to several clerical errors, Alvarez repeatedly failed to serve Plaintiff with the motion to strike.  [DE 19, 21, 29].  Service was properly made on June 10, 2011.  [DE 29].  In the interim, Plaintiff filed his Motion for Default Judgment, Motion to Institute Class Action, Motion to Impose Sanctions.  [DE 20].

## II.    Analysis

### A. The motion for a more definite statement, to strike and to dismiss

#### 1.        The complaint violates Rule 8

Although Alvarez labels the first section of his motion as a request for a more definite statement, his argument and authority concern Plaintiff's failure to comply with the requirements of Federal Rule of Civil Procedure 8(a).  [DE 13, pp. 2-3].  Rule 8(a)(2) provides that a plaintiff must allege "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  The Court agrees that the complaint is neither short nor plain.  Instead, Plaintiff presents a lengthy narrative that includes arguments, many of which are more political than legal in nature, and then appears (although he does not expressly say so) to incorporate his entire narrative, and each preceding "Complaint," into each subsequent "Complaint," making it impossible for Alvarez to discern, and meaningfully respond to, each claim.

The Eleventh Circuit Court of Appeals has condemned such "shotgun pleadings."  *See*

*e.g., Osahar v. United States Postal Service*, 297 Fed.Appx. 863, 864 (11th Cir. 2008);

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th

Cir. 2002).  As the Court has explained:

> The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the contents (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.  Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.

*Strategic Income*, *id*.  This describes precisely the challenge this Court faces in sifting

through Plaintiff's "Complaints."   Examples of Plaintiff's shotgun pleading include the

following:

> **Complaint # 1;** Alvarez arrested and imprisoned me on the allegations that I violated a bunch of defacto laws, of a quasi governmental agency (ie; DHSMV) which is defacto as well.
>
> \*\*\*
>
> Now even assuming, arguendo, that an administrative agency, such as the DHSMV was dejure in nature, the agency would still have to comply with the Administrative Procedure Act by promulgating its statutes, rules or regulations before they would have any force and effect of law.  To substantiate the aforesaid facts concerning promulgation, I now present the memorandum of law I presented to the unknown officer who initially detained me at Wal Mart. [DE 1, at p. 9].[3]
>
> \*\*\*
>
> **Complaint #2;** Alvarez never cited any promulgated authority to me, and probably could not to this day, he just arrested me on a bunch of naked statutes, conducted an illegal search seizure, and then imprisoned me as well!

---

[3] The two pages that follow appear to restate the contents of Plaintiff's document arguing the illegality of the Florida Department of Highway Safety and Motor Vehicles. [*See* DE 1, pp. 10-11].

I would now like to address Alvarez's assertion that 'driving a privilege, not a right,' as mentioned on page #3 of the Statement of Case/Occurrence.  I now entail on significant findings I and my friends have found in our studies of law.  Please excuse the poetry, its just that tortfeasors tend to irritate us, especially when it's a cop.  [*Id*. at p. 12].[4]

It is very difficult for this Court, and undoubtedly Alvarez, to sift though these and similar rambling and confusing allegations, and identify potential causes of action.  Plaintiff's failure to comply with Rule 8(a)(2) deficiencies alone require the Complaint to be dismissed without prejudice.[5]  *See Osahar* and *Strategic Income*, *supra* (both affirming dismissal of "shot gun" complaint).  However, because Plaintiff would likely file an amended complaint, I will address at this time Alvarez' substantive arguments on the motion to dismiss.[6]

---

[4] The following nine pages list citations to legal authorities and arguments that Plaintiff contends establish that "the Court of this nation, from the lowest to the highest Court all agree that driving, traveling, etc., is a right, not a privilege, as Alvarez contends." [DE 1 at p. 21].  This section begins with the following:  "It should be clear by now, The State's propaganda to the contrary backed by The State's private *de facto* army of "criminal justice practitioners," trained primarily, if not exclusively, by all available evidence, in the ways and means of that Great American Legal Fiction, The State, reigning in regal *de facto corpora ficta* splendor, that, in truth, in America, the people are the sovereigns and public officer holders are merely trustees and servants."

[5] If Plaintiff is permitted to file an amended complaint, he will have to meet the requirements of Rule 8(a).  Accordingly, I do not address Alvarez' request that portions of the complaint be stricken.

[6] Plaintiff has expressed frustration at length of time it has taken the Court to issue this Report and Recommendation, which the Court understands.  Careful consideration of the Complaint, and the issues raised by the motion to dismiss, however, has been time-consuming.  Plaintiff's failure to comply with Rule 8 has made this process difficult.  Moreover, some of the legal issues are complex.  It is disappointing that the Defendant, who is represented by able counsel who surely understands the challenges presented here, submitted mostly summary arguments that did not have the support of a reasoned analysis, thus requiring the Court to undertake a significant amount of independent legal research.

### 2.    The Claims

Plaintiff asserts eight "Complaints" arising out of his arrest, detention and conviction, and Alvarez moves to dismiss them for failure to state a claim and pursuant to the doctrine of qualified immunity.

#### a.    Applicable legal standards

#### i.    motion to dismiss

In reviewing a motion to dismiss, the court must accept as true "well-pleaded facts and reasonable inferences drawn from those facts.  Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymyple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quotations omitted).  "A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted deductions or facts or legal conclusions masquerading as facts."  *Sarver v. Jackson*, 344 Fed.Appx. 526, 527 n.2 (11th Cir. 2009) (quotations omitted).

A plaintiff must allege enough facts to state a claim for relief that is plausible on its face and sufficient to raise the right to relief beyond a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  To do so, a plaintiff must do more than provide labels and conclusions or a formulaic recitation of the elements of a cause of action.  *Id.* at 555.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

Complaints by *pro se* plaintiffs, such as Plaintiff here, are read more liberally than those drafted by attorneys.  *Osahar*, 297 Fed.Appx at 864.  However, a *pro se* litigant is not

relieved of his obligation to allege sufficient facts to support a cognizable legal claim and the court may not rewrite a deficient pleading. *Id.*

### ii.    section 1983

To state a claim under § 1983, Plaintiff must allege that "(1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law."[7] *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

### iii.    qualified immunity

The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks and citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." *Id.* at 1194. Thus, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to determine the validity of

---

[7] Plaintiff asserts that he brings his claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. Sections 1985 and 1986 require allegations of a conspiracy. *See* 42 U.S.C. §§ 1985, 1986. Because Plaintiff has not alleged any agreement, Plaintiff has failed to allege a conspiracy and thus has not stated claims under these two statutes.

a qualified immunity defense as early in the lawsuit as possible. *Ferraro*, 284 F.3d at 1194.

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (quotation marks and citations omitted). Here, Alvarez has clearly established that he was acting within his discretionary authority, as he is a police officer, who arrested Plaintiff. *Id*. Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*

In order to defeat the defense of qualified immunity, the plaintiff must establish that: (1) the facts alleged show the officer's conduct violated a constitutional right, and (2) at the time of violation, the constitutional right was clearly established.   For purposes of this analysis, the facts must be viewed in the light most favorable to the plaintiff.  *Id*. (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Lee v. Chapman*, No. 5:07-CV-465 (CAR), 2010 WL 1487233, * 2 (M.D. Ga. Feb. 5, 2010) (where, as here, "the defense of qualified immunity is raised in a Rule 12(b)(6) motion seeking dismissal, the immunity should be granted if the complaint fails to allege a violation of a clearly established constitutional or statutory right.). Finally, the defense of qualified immunity is not available against a claim for injunctive relief.  *Pearson*, 555 U.S. at 242-43.

### b.    Complaints 1, 2 and 8

Complaints 1, 2 and 8 appear to be premised on the assertion that Alvarez violated Plaintiff's constitutional rights when he issued traffic citations to Plaintiff pursuant to invalid

"defacto" laws."[8]  [DE 1, pp. 9, 12, 25].[9]  To overcome Alvarez' defense of qualified immunity on these three Complaints, Plaintiff must allege facts that show both that Alvarez acted in violation of the Constitution in enforcing the motor vehicle code *and* that it was clearly established at the time of Plaintiff's arrest that enforcement of the motor vehicle code was unconstitutional.   Plaintiff makes neither of these showings.

Plaintiff concedes that he was driving without a driver's license or vehicle registration, and that he admitted the same to the first officer.  [DE 1, p. 2].  Thus, Alvarez clearly had probable cause that Plaintiff had violated the motor vehicle code and his actions in charging Plaintiff with these violations do not implicate the Fourth Amendment. Moreover, Plaintiff does not point to any authority that specifically holds that the Florida statutes requiring drivers to have a driver's license and vehicle registration are unconstitutional, and this Court knows of none.

The United States Supreme Court has explained that the doctrine of qualified immunity shields an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.  *Pearson*, 555 U.S. at 244.  Accepting the facts as alleged by Plaintiff, Alvarez was reasonable in his belief that his conduct in enforcing traffic

---

[8] Complaint 2 also briefly references an illegal search.  [DE 1, p. 12].  I address this issue in connection with the allegations in Complaint 3.

[9] Plaintiff states the heart of his complaint is "the whole invalidity of the motor vehicle code." [DE 16, p. 3].  If Plaintiff wished to challenge the constitutionality of the motor vehicle code under which he was cited, the proper forum for doing so would have been in the criminal case.  Here, however, he seeks to hold Alvarez liable for the enforcement of that code in his capacity as a law enforcement officer, a very different claim.

regulations complied with the law.  Thus, he is entitled to qualified immunity from the claims set forth in Complaints 1, 2 and 8.

### c.      Complaint 3

Complaint 3 alleges that Alvarez, after illegally searching Plaintiff's vehicle, wrongfully cited Plaintiff for misuse of a handicap pass, even though Plaintiff was not parked in a handicap zone and did not display the pass.  [DE 1, p. 21].  Plaintiff appears to be attempting to plead two different claims here:  that his citation for misuse of a disabled parking permit was unconstitutional, or, that the search of his car, and seizure of the pass, violated the Constitution.

### i.      Probable cause for charge of misuse of handicap pass

Regarding the first possible claim, Plaintiff alleges that this charge was improper, because he did not display or otherwise use the pass at the time of his arrest and Alvarez "never witnessed a/the crime."  [DE 1, p. 21].  Reading the complaint liberally, Plaintiff appears to be arguing that Alvarez - by taking Plaintiff into custody - violated his Fourth Amendment rights because he did not have probable cause to charge him, and thus to detain him, with the handicap pass violation.  As noted above, Alvarez clearly had probable cause to charge Plaintiff for driving without a license and failing to register his vehicle.  "If there is probable cause for one charge," an arrest is proper.  *Williams v. City of Homestead, Florida*, 206 Fed.Appx. 886, 2006 WL 3102305, * 1 (11th Cir. Nov. 2, 2006).  Thus, Plaintiff cannot state a claim for a Fourth Amendment violation based on the charge of misusing a handicap pass.

Because Plaintiff has not alleged that "the defendant deprived him of a right secured under the United States Constitution or federal law" in connection with the charge of misusing a handicap pass, he has not stated a claim under § 1983. *Richardson*, 598 F.3d 734, 737 (11th Cir. 2010).[10]

### ii.    Illegal search

Plaintiff's second claim in Complaint 3 is that Alvarez conducted an illegal search of his vehicle in violation of the Fourth Amendment. Once again, Alvarez argues that *Heck* bars Plaintiff's claim, because Plaintiff pled no contest to the charge of resisting arrest. Even if I were to determine that *Heck* applied to a plaintiff who was not in custody, the *Heck* doctrine does not, at least at this juncture, bar Plaintiff's alternate claim, that the search of his vehicle was a violation of the Fourth Amendment.

The record does not include information (such as the statute or ordinance for which Plaintiff was convicted) that the Court would need to determine whether a successful § 1983 action for the unreasonable search of Plaintiff's car would necessarily imply the invalidity of that conviction, and Alvarez has not otherwise addressed the application of *Heck* to the

---

[10] Defendant argues that Plaintiff's claim is barred by the *Heck* doctrine, articulated by the Supreme Court, in *Heck v. Humphrey*, 512 U.S. 477 (1994): when a plaintiff brings a § 1983 claim in connection with a conviction, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Abusaid v. Hillsborough County Bd. of County Comm.*, 405 F.3d 1298, 1315 (11th Cir. 2005) (*quoting Heck*, 512 U.S. at 487). Because Plaintiff pled no contest to the charge of misuse of a disabled parking permit, Alvarez argues that his § 1983 is barred by *Heck*. *Heck* may not always apply where, as here, the plaintiff is not in custody. *See generally Vickers v. Donahue*, 137 Fed.Appx. 285 (11th Cir. 2005). Because Plaintiff failed to state a claim for § 1983 in connection with the charge of misusing the handicap pass, the Court need not consider *Heck*.

illegal search allegations.  *See Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("Because an illegal search or arrest may be followed by a valid a conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction.").

Because Plaintiff's Fourth Amendment claim presently survives the *Heck* doctrine, I now consider Alvarez' defenses of failure to state a claim and qualified immunity.

As for the first defense, in order to state a claim under § 1983, Plaintiff must allege: (1) a violation of the constitution or federal law (2) by a person acting under color of law. *See Richardson*, 598 F.3d at 737.  Plaintiff alleges that Alvarez, in his capacity as a law enforcement officer,  removed Plaintiff from his vehicle, handcuffed him and then, with another officer, searched Plaintiff's car.  [DE 1, p. 4].  Searches conducted absent a search warrant are "*per se* unreasonable under the Fourth Amendment unless they fall within a limited set of well-defined exceptions."  *Perry v. Greene County, GA*, No. 3:08-CV-43 (CDL), 2009 WL 4893589, * 8 (M.D. Ga. Dec. 9, 2009).  Alvarez does not identify any exception under which the alleged warrantless search of Plaintiff's vehicle would comply with the Fourth Amendment.

While the analysis could end there (given Alvarez's failure to address these issues), the Court, on its own, has considered the applicability of two possible exceptions to the Fourth Amendment prohibition on warrantless searches that often apply to vehicle searches: (1) an inventory search, or (2) a search incident to arrest.  Because Plaintiff alleges that his vehicle was left in the Wal-Mart parking lot after his arrest [DE 1, p. 7], the search of his

vehicle does not fall with the exception for inventory searches. *Perry*, 2009 WL 4893589, * 8 (inventory exception allows search of a vehicle absent a warrant when the vehicle has been impounded).

Likewise, based solely on the facts alleged in the complaint, the alleged search does not fall within the scope of the exception of a search incident to arrest. Police may search a vehicle incident to a recent occupant's arrest "only when the arrestee is unsecured and withing reaching distance of the passenger compartment at the time of the search" or "when it is reasonable to believe evidence relevant to the crime of arrest may be found in the vehicle." *Arizona v. Gant*, 129 S.Ct. 1710, 1719 (2009). Plaintiff alleges he was handcuffed before the search and thus unable to reach into the car, and there is no evidence in the record to suggest that Alvarez had a reasonable basis to believe the vehicle contained evidence relevant to the traffic violations charged. *Id.* (often, "when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence" that would justify a warrantless search). Thus, Plaintiff has alleged that Alvarez violated Plaintiff's Fourth Amendment right when he made a warrantless search of the car.

Having found that Plaintiff has alleged a § 1983 claim, I turn to Alvarez' defense of qualified immunity. Taking the facts as alleged in the complaint as true, I find that Plaintiff has satisfied his burden to overcome the defense of qualified immunity at this juncture. Specifically, as shown in the above discussion, Plaintiff has established that (1) the facts alleged show that Alvarez' conduct in making a warrantless search of Plaintiff's vehicle violated a constitutional right, and (2) at the time of violation, this constitutional right was

clearly established.  *Ferraro*, 284 F.3d at 1194. (*citing Saucier v. Katz*, 533 U.S. 194 (2001)).[11]

Based on the foregoing, Plaintiff should be permitted to amend his complaint, to state his claim for violation of the Fourth Amendment based on the warrantless search of his vehicle.  Plaintiff should do so in compliance with Rule 8(a), with a short and plain statement to which Alvarez may frame a response.

### d.   Complaint 4

In Complaint 4, Plaintiff alleges that Alvarez wrongfully charged him with resisting arrest, "when all I tried to do was lock my car . . . . "  [DE 1, p. 22].  Plaintiff concedes that he pled no contest to the charge of resisting arrest.  [*Id.* at p. 6].  A judgment in favor of Plaintiff on Complaint 4, that he was wrongfully charged with resisting arrest because the facts did not support that charge, would appear to necessarily imply the invalidity of his conviction and, thus, under *Heck*, this claim would barred.  *See Heck*, 512 U.S. at 487 n. 6 (noting that, generally, a claim for violation of § 1983, where plaintiff was convicted of resisting arrest, would be barred).

I need not resolve whether *Heck* applies to Complaint 4 because the doctrine of qualified immunity protects Alvarez from liability in connection with this Complaint.  As long as there is arguable probable cause for an arrest, qualified immunity will apply. *Ferraro*, 284 F.3d at 1195.  Arguable probable cause is established "where reasonable

---

[11] Alvarez may, of course, assert this defense on summary judgment or at trial, when the factual record is more developed.

officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Id.* Based on the facts alleged in the complaint, [DE 1, at p. 3-4], a reasonable officer in the same circumstances and possessing the same knowledge as Alvarez could have believed that Plaintiff was attempting to resist arrest, rather than as Plaintiff contends, merely attempting to lock his car. Thus, Alvarez is entitled to qualified immunity against the claims set forth in Complaint 4.[12]

### e.     Complaint 5

In Complaint 5, Plaintiff asserts that his Sixth Amendment right to be informed of the nature of the charges against him was violated when Alvarez gave him an illegible copy of the complaint. [DE 1, p. 22]. The Sixth Amendment "guarantees every defendant the right to be informed of the Government's accusation against him." *Hardy v. Broward County Sheriff's Office*, 238 Fed.Appx. 435, 442 (11th Cir. 2007). Plaintiff concedes in his complaint that the morning after his arrest, he was brought before a state court judge who informed him of the charges against him. [DE 1, p. 6]. Thus, Plaintiff has failed to allege a violation of his Sixth Amendment rights and Complaint 5 fails to state a claim under § 1983.

### f.     Complaint 6

In Complaint 6, Plaintiff asserts a claim based on Alvarez' failure to issue him a *Miranda* warning at the time of his arrest. [DE 1, p. 22]. Failure to advise a defendant of his *Miranda* rights does not give rise to civil liability under § 1983. *Shabazz v. Summers*, No.

---

[12] Moreover, as with Complaint 3, because Alvarez had probable cause to charge Plaintiff with driving without a license and registration, Plaintiff's arrest was proper.

1:07cv755-MHT, 2010 WL 653879, * 8 (M.D. Ala. Feb. 19, 2010).  Thus, Complaint 6 fails to state a claim under § 1983.

### g.      Complaint 7

Complaint 7, which asserts that Alvarez applied the handcuffs to Plaintiff too tightly, causing Plaintiff's left hand to go numb, appears to be attempting to state a Fourth Amendment claim of excessive force.  [DE 1, p.22].  Plaintiff does not allege any injury resulting from the handcuffs.  The application of a *de minimus* force does not violate the Fourth Amendment, and Complaint 7 fails to state a claim under § 1983.  *Maiorano v. Santiago*, No. 6:05CV107ORL-19KRS, 2005 WL 1200882, * 5 (M.D. Fla. May 19, 2005).

Moreover, qualified immunity applies to a claim of excessive force unless a reasonable officer in the defendant's position would inevitably conclude that, under the applicable constitutional standard, that the force was unlawful.  *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997).  A reasonable officer in Alvarez' position would not inevitably conclude that the *de minimus* force used to handcuff Plaintiff, which resulted Plaintiff's complaint of minor, transient discomfort, was unlawful.  Thus, Alvarez also is entitled to qualified immunity on Complaint 7.

### 3.      Summary

In summary, I recommend that Complaints 1, 2, 4, and 8 be dismissed with prejudice because Alvarez is entitled to qualified immunity on those claims.  Complaint 4 and the portion of Complaint 3 that challenges the factual basis of Plaintiff's conviction for misuse of a disabled parking permit should be dismissed with prejudice because they fail to state a

claim. Complaints 5 and 6 should be dismissed with prejudice for failure to state a claim under § 1983 because the factual allegations of the complaint, taken as true, establish that no § 1983 claim exists. Complaint 7 should be dismissed with prejudice both for failure to state a claim and because Alvarez is entitled to qualified immunity on that claim. Finally, the portion of Complaint 3 that attempts to state a claim under § 1983 for violation of the Fourth Amendment in connection with the search of Plaintiff's vehicle should be dismissed without prejudice for failure to comply with the requirements of Rule 8(a).[13]

### B. The remaining pending motions

Also pending are Defendant Carlos Alvarez' Motion to Strike Amended Complaint for Consequential Damages [DE 17]; and Plaintiff's Motion for Default Judgment, Motion to Institute Class Action, Motion for Sanctions. [DE 20]. In light of my recommendation that the complaint be dismissed and Plaintiff be given the opportunity to replead only his claim for violation of the Fourth Amendment in connection with the search of his vehicle, I recommend that both motions be denied as moot.[14]

### III. Recommendation

Based on the foregoing, I RECOMMEND that:

1. The Court **GRANT** Defendant Carlos Alvarez' Motion for More Definite

---

[13] Alvarez does not address Plaintiff's claim for injunctive relief. Because Plaintiff does not identify under which Complaint he is seeking injunctive relief, I recommend that the claim be dismissed without prejudice to allow Plaintiff to clarify the alleged basis for such relief.

[14] I recognize that Plaintiff's motion is grounded, in part, on defense counsel's admitted, repeated failures to serve Plaintiff with the motion to strike. The Court is satisfied that defense counsel did not act deliberately in this regard. Sanctions are not warranted.

Statement, Motion to Strike, and/or Motion to Dismiss Complaint [DE 13], dismissing Complaints 1, 2, 4, 5, 6, 7, and 8 with prejudice.  I further recommend that the Court dismiss the portion of Complaint 3 that attempts to state a claim under § 1983 for violation of the Fourth Amendment in connection with the search of Plaintiff's vehicle without prejudice, and the remaining claims in Complaint 3 with prejudice.

2.     The Court **DENY** Defendant Carlos Alvarez' Motion to Strike Amended Complaint for Consequential Damages [DE 17]; and Plaintiff's Motion for Default Judgment, Motion to Institute Class Action, Motion for Sanctions [DE 20], as moot.

## IV.    Objections

The parties may file written objections to this Report and Recommendation with the Honorable James Lawrence King within **fourteen days** of the date of this Report and Recommendation.  It is the objecting party's responsibility to ensure that any objections are docketed with the Court by this deadline.  Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein.  *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 17th day of October, 2011.

_____

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:
The Honorable James Lawrence King
Counsel of record
Andrew F. Karacsonyi
3830 NE Indian River Dr.
Lot# 312
Jensen Beach, FL 34957